IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,      §
                               §
                Plaintiff,     §
                               §   Criminal No. 3:06-CR-022-D
VS.                            §
                               §
ANTHONY JOSEPH GRAZIOSO,       §
                               §
                Defendant.     §

MEMORANDUM OPINION
AND ORDER

Defendant Anthony Joseph Grazioso ("Grazioso"), indicted for

the offenses of possession with intent to distribute

methamphetamine, felon in possession of a firearm, and possession

of a firearm in furtherance of a drug trafficking crime, moves to

suppress all evidence seized on March 8, 2005, including, but not

limited to, methamphetamine, from the searches of his pickup truck

and two storage stalls.[1] Having conducted an evidentiary hearing,

the court concludes, for the reasons that follow,[2] that the motion

must be granted.

_____

[1]Grazioso also moves to suppress evidence seized from a search
of the premises located at 2700 East Grauwyler, #132, Irving,
Texas, and to suppress his identity and all statements and
testimony concerning the alleged contraband seized during the
searches.  In the suppression hearing, however, no evidence was
produced that the residence was searched or that Grazioso made any
incriminating statements.  The court need not address this aspect
of Grazioso's motion.

[2]Pursuant to Fed. R. Crim. P. 12(d), the court sets forth in
this memorandum opinion and order its essential findings.

I

On March 4, 2005 Henry Biddle ("Agent Biddle"), an agent of the Drug Enforcement Administration, contacted Brian Schutt ("Investigator Schutt"), an investigator in the Narcotics Division of the Irving, Texas Police Department ("IPD").   Agent Biddle informed Investigator Schutt that a confidential informant ("CI") had stated that a person named "Tony," a white male, approximately age 43, was dealing methamphetamine from two storage stalls located at Carl Road and State Highway 183 ("S.H. 183") in Irving. According to the CI, "Tony" ran a lawn service and carried ¼- to ½-pound of methamphetamine in a blue or red Ford Ranger pickup truck, the drugs were located in a toolbox in the bed of the truck, and he took in payment for methamphetamine items stolen during burglaries or purchased with stolen credit cards.   The CI also related that "Tony" stored the stolen items in the two storage stalls.

Investigator Schutt and IPD Sergeant Rubealcaba believed that "Tony" was defendant Grazioso.   Investigator Schutt, who had known of Grazioso throughout his 20-year IPD career, was aware that Grazioso drove a blue Ford pickup truck, and both knew him to be a methamphetamine dealer.   Investigator Schutt ran Grazioso's name through the RMS, which showed that Grazioso owned a blue Ford Ranger.

Investigator Schutt apprised Ken Fay ("Investigator Fay"), an

IPD undercover narcotics investigator assigned to the Special Investigation Section of the Criminal Investigation Division, of the information that Agent Biddle had relayed to him. Later that night, around 11:50 p.m., Investigator Fay conducted surveillance at the Public Storage facility near the intersection of Carl Road and S.H. 183 in Irving. He observed a blue Ford Ranger pickup truck parked directly in front of stall K459 and Grazioso standing near the toolbox on the driver's side of the pickup. Grazioso was already at the storage facility when Investigator Fay arrived. Another vehicle was parked for a short amount of time in front of the pickup. After about 10 minutes of surveillance, Grazioso departed.

Investigator Fay radioed for assistance and followed him. Grazioso traveled southbound on Carl Road toward East Grauwyler Road. Investigator Fay noticed Grazioso acting nervously as he drove, frequently looking around and in his rear-view mirror, which is consistent with the conduct of someone engaged in drug trafficking counter-surveillance. Investigator Fay followed Grazioso to a gas station at the corner of East Grauwyler Road and Carl Road. Grazioso exited his truck and looked at Investigator Fay, so Investigator Fay "called it," meaning he terminated the surveillance due to Grazioso's actions.

On the night of March 7, 2005, at around 11:50 p.m., Investigator Fay again conducted surveillance at the storage

facility.   He positioned himself in the same place as before and observed Grazioso, the same blue Ford Ranger, another white male, and a red vehicle.   Investigator Fay watched Grazioso for approximately 10 minutes before Grazioso departed.   After Grazioso stopped at a nearby gas station, he headed eastbound on S.H. 183.

Investigator Fay called for assistance and followed Grazioso on S.H. 183, observing him from a distance of about three car lengths.   Grazioso took the Grauwyler Road exit.   Investigator Fay observed that Grazioso drove partially onto the shoulder of the road and continued to straddle the right lane and shoulder for about five to seven seconds while exiting the highway.   Because Investigator Fay was driving an unmarked unit, he radioed for a marked IPD patrol unit to initiate a traffic stop based on Grazioso's failure to maintain a single lane of traffic.   IPD Patrol Officer Jason Rogers ("Officer Rogers"), who was patrolling nearby and heading westbound on Grauwyler Road near S.H. 183, responded within seconds.   Officer Rogers effected the stop and Grazioso pulled into the parking lot of the View Pointe Apartments, located at 2700 East Grauwyler Road in Irving.

After it was determined that Grazioso had an outstanding parole warrant for a parole violation,[3] Officer Rogers decided to place him under arrest and later decided to impound Grazioso's

---

[3] It is undisputed that neither Investigator Fay nor Officer Rogers was aware before the traffic stop of Grazioso's outstanding warrant.

truck.  Investigator Fay and another officer conducted an inventory of Grazioso's truck between 1:00 and 1:30 a.m. on March 8.[4]  Using a key from Grazioso's keychain to unlock the toolbox in the truck bed, they found 191 grams of methamphetamine, distribution baggies, and paperwork showing Grazioso as the lessee of two storage stalls, including stall number K459, which Investigator Fay had surveilled. Investigator Fay also found in the toolbox an empty case for a Glock 17 gun.

Soon after the inventory search, Investigator Fay contacted IPD Officer Ray Carmack ("Officer Carmack") and asked him to run his drug-detecting canine outside the K459 storage stall at the Public Storage facility.  At approximately 2:00 a.m., Officer Carmack ran his canine along the entire row of storage stalls that included K459.  The dog alerted outside stall K459, and Officer Carmack notified Investigator Fay.

Investigator Fay decided to seek a warrant to search both of Grazioso's storage stalls.  He prepared a search warrant affidavit and brought it before a county magistrate at approximately 5:30 a.m.  The affidavit recounted much of the information the CI had provided Agent Biddle and that he had in turn relayed to

---

[4]A principal focus of the suppression hearing surrounded the details of the decision to conduct an inventory search and whether the police conducted the search pursuant to IPD policy.  Given the rationale for the court's decision, it need not address questions that pertain to whether the inventory search would have been lawful had the initial stop been a permissible *Terry* stop.

Investigator Schutt.   The document also described Investigator Fay's surveillance of Grazioso at the storage stalls on March 4 and 7 and his conduct while under observation, the traffic stop, the arrest, the inventory search (including the discovery of methamphetamine, drug paraphernalia, and storage stall leases that showed Grazioso to be the lessee), and the canine sniff. Concerning the canine sniff, the affidavit stated, in pertinent part: "ON 03-08-05, YOUR AFFIANT CONTACTED OFFICER R. CARMACK #764 WHO IS EMPLOYED BY THE IRVING POLICE DEPARTMENT AS A K-9 HANDLER FOR 'ROCKY,' ATTACHED HERETO AS EXHIBIT 'A' AFFIDAVIT OF QUALIFICATIONS; IT IS TO BE CONSIDERED AS PART OF THIS AFFIDAVIT AS IF WRITTEN HEREIN." D. Ex. 11.   The affidavit of qualifications, however, was not attached to the search warrant affidavit at the time Investigator Fay submitted it to the magistrate.   The magistrate issued a search warrant for stalls K459 and M516.

Investigators Fay and Schutt searched these storage stalls pursuant to the warrant.   One stall was packed with items such as tools, lawnmowers and edgers, computer equipment, and furniture. In stall K459, the officers found and seized firearms, including a Glock .40 caliber pistol, a Smith & Wesson .347 Magnum revolver, and a Mossberg 12-gauge shotgun.   The officers also found and seized controlled substances, including methamphetamine.

The grand jury later indicted Grazioso for the offenses of possession with intent to distribute methamphetamine, in violation

- 6 -

of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  Grazioso filed a motion to suppress on February 23, 2006.  The court conducted an evidentiary hearing on June 16 and 20, 2006.

## II

The court first considers Grazioso's motion to suppress the evidence seized during the search of his truck.

### A

The Fourth Amendment protects individuals against unreasonable searches and seizures. Traffic stops are deemed seizures for the purposes of the Fourth Amendment. The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio,* 392 U.S. 1 (1968).  Under the two-part *Terry* reasonable suspicion inquiry, we ask whether the officer's action was: (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place . . . . For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.  We have stated previously that reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure.  In

> evaluating the totality of the circumstances,
> a court may not consider the relevant factors
> in isolation from each other.  In scrutinizing
> the officer's basis for suspecting wrongdoing,
> it is clear that the officer's mere hunch will
> not suffice.  It is also clear, however, that
> reasonable suspicion need not rise to the
> level of probable cause.

*United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (internal quotation marks and some citations omitted), *cert. denied*, ___ U.S. ___, 126 S.Ct. 1449 (2006).  The government bears the burden of establishing by a preponderance of the evidence two elements under *Terry*: that the stop was justified at its inception and that the Fourth Amendment intrusions were reasonably related in scope to the circumstance that justified the interference in the first place.  *See United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003); *United States v. Riley*, 968 F.2d 422, 424-25 (5th Cir. 1992) (addressing warrantless search of home) ("Because a warrantless search is presumed to be unreasonable, the Government has the burden of proving that the warrantless search was conducted pursuant to an exception.").  For a stop to be justified at its inception, "the officer [must have] a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir. 2003) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  "The concept of reasonable suspicion . . . is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *Sokolow*, 490 U.S. at 7 (quoting *Illinois v. Gates*, 462 U.S. 213,

232 (1983)).  "[T]he facts giving rise to reasonable suspicion 'must be judged against an objective standard.'" *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999) (quoting *Terry*, 392 U.S. at 21-22).  "[T]he constitutional reasonableness of the stop does not depend upon the actual motivations of the officer involved." *Sanchez-Pena*, 336 F.3d at 437.

B

To support the first element, the government relies solely on the ground that Grazioso failed to maintain a single lane of traffic, in violation of Tex. Transp. Code. Ann. § 545.060(a) (Vernon 1999).[5]  Section 545.060(a) provides that "[a]n operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely."  The government contends in its brief, and argued at the hearing, that Investigator Fay (and, in turn, Officer Rogers) was justified in stopping Grazioso because he observed Grazioso straddle the shoulder and right lane of the highway as he was exiting.[6]  In his brief, Grazioso posits in

---

[5]As the court explains *infra* at § II(C)(1), the government has waived any argument that Investigator Fay lawfully effected the initial stop of Grazioso's truck based on probable cause to believe he was carrying narcotics in the truck.

[6]In its closing argument, the government relied on *United States v. Jones*, 185 F.3d 459 (5th Cir. 1999), to support the assertion that the stop was supported by reasonable suspicion. *Jones* is distinguishable, however, because there the officer

- 9 -

conclusory fashion that the police were without probable cause to approach, question, detain, or request consent to search him. But at the hearing, Grazioso cited *Hernandez v. State*, 983 S.W.2d 867 (Tex. App. 1998, pet. ref'd), and argued that, absent any evidence that he failed in an unsafe manner to maintain a single lane of traffic, the government did not establish an observed traffic violation that gave Investigator Fay reasonable suspicion to effect a traffic stop.

In *Hernandez* the Texas Court of Appeals interpreted § 545.060(a) as prohibiting only the failure to maintain a single lane of traffic when doing so is unsafe:

> We believe the statutory language shows a legislative intent that a violation of section 545.060 occurs only when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely. Neither the current provision in the Transportation Code nor the original statute creates two separate offenses, but rather only one: moving out of a marked lane when it is not safe to do so.

*Hernandez*, 983 S.W.2d at 871. Texas courts have consistently followed *Hernandez*, holding that § 545.060(a) is violated "*only* when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely." *State v. Huddleston*, 164 S.W.3d 711, 716 (Tex. App. 2005, no pet.) (emphasis added) (citing

_____

observed a violation of a Louisiana law. *See id.* at 463-64. And, unlike the instant case, there is no indication in *Jones* that Louisiana courts had held beforehand that the conduct the officer observed was *not* a violation of Louisiana law. *Cf. id.*

*Hernandez*, 983 S.W.2d at 871).  Evidence of crossing the solid white line, even multiple times, is alone insufficient to constitute a violation of § 545.060.  *See id.* (holding police officer had no reason to suspect violation of § 545.060 when he witnessed defendant safely cross fog line five times over six-mile stretch of road); *Corbin v. State*, 33 S.W.3d 90, 94 (Tex. App. 2000) (holding no violation of § 545.060 when defendant crossed over side stripe for distance of twenty feet at speed below posted speed limit), *rev'd on other grounds*, 85 S.W.3d 272 (Tex. Crim. App. 2002); *State v. Tarvin*, 972 S.W.2d 910, 911-12 (Tex. App. 1998, pet. ref'd) (holding that crossing right-hand white line twice was not violation of § 545.060 absent evidence that defendant went into another lane of traffic, had difficulty maintaining safe speed, or otherwise drove erratically).  By contrast, when there is evidence of erratic driving or heavy traffic conditions, Texas courts have found violations of § 545.060.  *See, e.g.*, *Tyler v. State*, 161 S.W.3d 745, 749-50 (Tex. App. 2005, no pet.) (concluding police officer had reason to suspect violation of § 545.060 when defendant straddled white line before erratically returning to his lane at an angle and there was evidence of heavy traffic); *Martinez v. State*, 29 S.W.3d 609, 611-12 (Tex. App. 2000, pet. ref'd) (holding it was not unreasonable for police officer to conclude that defendant had violated § 545.060 when defendant swerved onto shoulder late at night in moderate-to-heavy traffic).

- 11 -

In the instant case, the government did not prove that, when Grazioso failed to stay within his lane of traffic, his movement was not safe or was not safely made.  Investigator Fay merely testified that Grazioso drove partially onto the shoulder of the road and continued to straddle the right lane and shoulder for about five to seven seconds while exiting S.H. 183 at night.  He did not specify how far into the shoulder Grazioso operated his vehicle.  There was no testimony that Grazioso drove in an erratic manner, such as by swerving at a sharp angle either onto the shoulder or back onto the highway or exit ramp.  Nor was there evidence of any heavy traffic in the area.

Absent evidence that it was unsafe for Grazioso to drive partially on the shoulder, or that he drove in an unsafe manner, Investigator Fay lacked reasonable suspicion that Grazioso had committed a violation of § 545.060 in his presence.[7]  Because the government did not prove by a preponderance of the evidence that

---

[7]This is not a case in which Investigator Fay made a mistake of fact rather than of law.  Cases from other circuits hold that, when an officer is factually mistaken as to the existence of a traffic offense, that mistake does not render the stop illegal, but a mistake of law cannot provide the necessary objective basis for reasonable suspicion or probable cause.  *See, e.g., United States v. Ellington*, 396 F.Supp.2d 695, 699-700 (E.D. Va. 2005) (discussing cases).  Here, the conduct that Investigator Fay observed did not violate Texas law, and the cases that established this had been on the books for several years.  *See United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999) (noting that no well-trained officer could believe, ten years after Texas state court decision, that white light appearing with red light through cracked red taillight lens constituted violation of Texas traffic law).

the traffic stop was justified at its inception, the stop was unlawful under *Terry*. *See United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999) (noting circuit precedent that, where supposed traffic violation that formed basis of vehicular stop was not violation of state law, there was no objective basis for probable cause justifying stop) (citing *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998)).

C

Because the initial traffic stop was unlawful, the evidence that IPD seized during the subsequent inventory search must be suppressed under the exclusionary rule unless the government can show that it is not fruit of the poisonous tree. "The exclusionary rule prohibits introduction at trial of evidence obtained as the result of an illegal search or seizure." *United States v. Runyan*, 275 F.3d 449, 466 (5th Cir. 2001). The exclusionary rule also "encompass[es] evidence that is the indirect product or 'fruit' of unlawful police conduct." *Id.* (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). The government bears the burden of demonstrating that the exclusionary rule should not apply to the fruits of an illegal search or seizure. *Id.* at 456 (citing *United States v. Houltin*, 566 F.2d 1027, 1031 (5th Cir. 1978)).

1

There are three well-recognized exceptions to the exclusionary rule. "Evidence will be admissible despite the exclusionary rule

if: (1) it 'derives from an independent source,' (2) it 'has an attenuated link to the illegally secured evidence,' or (3) it 'inevitably would have been discovered during police investigation without the aid of the illegally obtained evidence.'" *Id.* at 466 (quoting *United States v. Miller*, 666 F.2d 991, 995 (5th Cir. 1982)).  Here, the government does not contend that any of the three exceptions applies.  As the court stated recently in *United States v. Johnson*, 2006 WL 1041148 (N.D. Tex. Apr. 20, 2006) (Fitzwater, J.), "[b]ecause the government has the burden of proving that an exception to the exclusionary rule applies, the court assumes the government determined that it cannot justify such an exception.  It therefore waived any argument that an exception to the exclusionary rule applies in this case."  *Id.* at *6 (citation omitted).

The government instead maintains that the search was a valid inventory search[8] or, alternatively, that the automobile exception applies and that the warrantless search was permissible because there was probable cause to believe Grazioso's truck contained contraband.  The fallacy in this argument is that it overlooks the government's obligation to establish that the search was not fruit of the illegal traffic stop.  *See, e.g., United States v. Hall*, 557 F.2d 1114, 1116 (5th Cir. 1977) (stating that, in determining

---

[8]Of course, in this case the police could not have conducted an inventory search absent a valid initial stop and a basis under Irving policy to perform such a search.

validity of warrantless search, two points in time, including initial stop of vehicle, must be examined, and holding that "[i]f the initial stop was not justified, then the subsequent acts are illegal fruits of the poisonous tree" (citing, *inter alia*, *Wong Sun*, 371 U.S. 471).   The Fifth Circuit recently reiterated in *United States v. Jaquez*, 421 F.3d 338 (5th Cir. 2005) (per curiam), that, where a traffic stop is unlawful,

> [u]nder the "fruit of the poisonous tree" doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation.

*Id.* at 341 (quoting *United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998)).   The government has failed to meet its obligation to show that the evidence obtained from the search was not derived from the exploitation of the illegal traffic stop.

2

    Nor is the government's probable cause argument sufficient to avoid suppressing the evidence, since it is offered in support of the search that followed the stop, not the initial stop itself. First, the only reference in the government's brief to a justification for the traffic stop relates to § 545.060(a): "The initial stop of Grazioso's truck was valid because he violated a Texas statute when he failed to maintain a single lane of traffic." P. Br. 4 (emphasis omitted); *see also id.* at 5 ("Based upon the

officers' observations and experience, they were lawfully justified in stopping Grazioso *for this traffic offense*." (emphasis added)). Second, the argument that the police had probable cause to search the toolbox is essentially presented in the alternative to the assertion that the inventory search was valid. This argument is located within the section titled, "The search of Grazioso's truck was a valid inventory search." *Id.* at 6 (emphasis omitted). And it begins by stating, "[i]n addition to the search qualifying under the inventory search exception, it was also supported by the automobile exception which 'permits authorities to search a vehicle when they have probable cause to believe it contains contraband.'" *Id.* at 8 (quoting *United States v. Saucedo-Munoz*, 307 F.3d 344, 351 (5th Cir. 2002)). At no point in the argument does the government state that Irving police had probable cause at the inception of the traffic stop, nor does it even mention the traffic stop.

It is significant that the government fails to allege that the police had probable cause at the inception of the traffic stop to stop Grazioso's truck. Because the stop was warrantless, the burden rests on the government to prove by a preponderance of the evidence that it was justified at its inception. *See United States v. Schlieve*, 159 Fed. Appx. 538, 542-43 (5th Cir. 2005) (per curiam) (unpublished opinion) (discussing government's burden in context of *Terry* stop). Neither in the government's brief nor during its closing argument at the suppression hearing did it put

Grazioso on notice that, as to the traffic stop, he needed to address anything other than the alleged violation of § 545.060(a) as the basis to effect the stop.  Thus even if the officers did have probable cause at the inception of the traffic stop to believe, for example, that Grazioso was then illegally in possession of narcotics, the government waived this argument by failing to raise it adequately as an alternative basis for the stop.

The government's failure to argue that Irving police had probable cause to stop and search Grazioso's truck also distinguishes this case from *Whren v. United States*, 517 U.S. 806 (1996), and *Devenpeck v. Alford*, 543 U.S. 146 (2004), which held that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck*, 543 U.S. at 153.  The government could have argued, but did not, that even if Investigator Fay's subjective belief that Grazioso had violated § 545.060(a) was incorrect, the traffic stop was nonetheless justified if he objectively had reason to suspect that Grazioso had committed some other traffic offense or had probable cause to believe he had violated a criminal statute.  Thus the government could have articulated alternative grounds to justify the traffic stop, even though Investigator Fay testified that he caused the stop to be initiated based solely on Grazioso's failure to maintain a single lane of traffic.  For example, the

- 17 -

government might have asserted that Grazioso drove on an improved shoulder, in violation of Tex. Transp. Code. Ann. § 545.058(a) (Vernon 1999),[9] or that the traffic stop was justified because Investigator Fay had probable cause to believe Grazioso possessed narcotics in the toolbox located in the truck bed.  But, as the court explains above, the government has not presented these arguments and has accordingly waived them.  *See Johnson*, 2006 WL 1041148, at *6.

Consequently, because the government has failed to meet its burden of establishing that the evidence seized during the search of Grazioso's truck is not fruit of the illegal traffic stop, the court holds that the evidence must be suppressed.

III

A

Grazioso also challenges the search of the two storage stalls pursuant to the search warrant.  He contends that (1) the information in the affidavit that shows probable cause was obtained by an unlawful warrantless search; (2) the warrant was not supported by probable cause because the affidavit did not set forth sufficient underlying circumstances from which the affiant

---

[9]Section 545.058(a) makes it a violation to drive on an improved shoulder to the right of the main road unless it is necessary and may be done safely.  But even had the government asserted this ground, it proffered no evidence that it was either unnecessary or unsafe for Grazioso to drive on the shoulder of S.H. 183.

- 18 -

(Investigator Fay) concluded that the alleged contraband was where the CI claimed it was and that the CI was credible or his information reliable; (3) the affidavit did not give the magistrate a substantial basis to believe that probable cause existed or that the alleged contraband would be found in a particular place; (4) the affiant knowingly and intentionally, or with reckless disregard for the truth, included false statements in the affidavit in support of the warrant; and (5) the search that was conducted exceeded the permissible scope of the search authorized by the warrant.  Grazioso maintains that, when the challenged portions are removed from the affidavit, the remainder is insufficient to support issuance of the search warrant.  The government contends the search warrant was supported by probable cause; even if the affidavit of qualifications is excised from the affidavit, the search warrant was supported by probable cause that was sufficient to warrant its issuance; and because Grazioso has failed to make an offer of proof or to show that the officers were not entitled to good-faith reliance on the warrant, the good-faith exception applies.

B

The court begins with Grazioso's first argument——that the evidence seized during the search of the storage stalls must be suppressed because the information in the search warrant affidavit that showed probable cause was obtained by an unlawful warrantless

search.   Although Grazioso does not specifically use the phrase
"fruit of the poisonous tree," he essentially asserts that the
evidence found in the storage stalls is fruit of the illegal
traffic stop and ensuing search of his truck.[10]

In the search warrant affidavit, Investigator Fay relied in
part on evidence seized during the inventory search that followed
the traffic stop.[11]   Because this evidence was used to support the

---

[10]Unlike the government, which failed to make the arguments
addressed above, Grazioso made a valid argument but did not give
the argument its precise label.   Accordingly, he did not waive it.

[11]Investigator Fay averred in the search warrant affidavit:

> ON 03/07/05, YOUR AFFIANT OBSERVED [GRAZIOSO]
> AT THE [STORAGE STALLS] LISTED IN #1 ABOVE.
> [GRAZIOSO] LEFT THE LOCATION AND WAS OBSERVED
> DRIVING A FORD RANGER TRUCK. [GRAZIOSO] WAS
> STOPPED ON TRAFFIC [sic] FOR FAIL[URE] TO
> MAINTAIN A SINGLE LANE AND WAS FOUND TO HAVE A
> PAROLE VIOLATION WARRANT FOR HIS ARREST.
> [GRAZIOSO] WAS PLACED UNDER ARREST.   DURING AN
> INVENTORY OF THE VEHICLE YOUR AFFIANT FOUND
> 191.1 GRAMS OF METHAMPHETAMINE IN A BLACK BAG
> WHICH WAS FOUND IN THE TOOL BOX IN THE BED OF
> THE FORD RANGER.   YOUR AFFIANT ALSO FOUND
> SEVERAL DISTRIBUTION BAGGIES ALONG WITH A SET
> OF DIGITAL SCALES AND SE[ ]VERAL UNUSED
> SYRINGES IN THE BLACK BAG.   THE
> METHAMPHETAMINE WAS SUBJECT TO A FIELD-TEST
> WITH POSITIVE RESULTS FOR METHAMPHETAMINE.
>
> ARRESTING OFFICER HENDERSON, WHILE SEARCHING
> THE VEHICLE INCIDENT TO ARREST FOUND LEASE
> PAPERWORK TO PUBLIC STORAGE WHICH IS THE
> LOCATION LISTED AS #1 ABOVE FOR TWO UNITS K459
> AND M516. [GRAZIOSO] WAS THE [LESSEE] OF THE
> TWO UNITS LISTED IN #1 ABOVE.

D. Ex. 11.

warrant for the search of the storage stalls, the court must determine whether evidence seized from the stalls is fruit of the unlawful traffic stop and search.  If it is, this evidence must also be suppressed.  *See Runyan*, 275 F.3d at 466.  The government bears the burden of demonstrating that the exclusionary rule should not extend to evidence seized during the search of the storage stalls.  *See id.* at 456.  That is, the government must demonstrate that the search of the stalls falls within one of the three exceptions to the fruit of the poisonous tree doctrine.

The government has not met this burden because it has not directly responded to this argument or explicitly addressed any of the three exceptions.  The government does contend, however, with respect to the affidavit of qualifications that, if it were excised from the affidavit, the search warrant would still have been supported by probable cause sufficient to warrant its issuance.  The court will assume *arguendo* that, although the government does not explicitly identify the independent source doctrine, it intends to argue that this exception applies.

The independent source doctrine "permits the introduction of unlawfully discovered evidence when the police have acquired that evidence through a distinct, untainted source." *United States v. Grosenheider*, 200 F.3d 321, 327 (5th Cir. 2000) (citing *Segura v. United States*, 468 U.S. 796, 815-16 (1984); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920)).  The doctrine has two

elements:

> in order for a later search pursuant to a warrant to be deemed "genuinely independent" of a prior illegal [search], the government must demonstrate two things: (1) that the police would still have sought a warrant in the absence of the illegal search; and (2) that the magistrate judge would still have issued the warrant had the supporting affidavit not contained information stemming from the illegal search.

*Runyan*, 275 F.3d at 467 (citing *Murray v. United States*, 487 U.S. 533, 542 (1988)). "Animating this doctrine is the recognition that the goal of the exclusionary rule is to put the police 'in the same, not a worse, position tha[n] they would have been in if no police error or misconduct had occurred.'" *Grosenheider*, 200 F.3d at 327 (emphasis omitted) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)). "When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Id.* (citing *Nix*, 467 U.S. at 443).

The government has failed to meet its burden on the first element of the independent source doctrine. *See id.* at 328 ("*Murray* also mandates that the district court find that the agents would have sought the warrant even if that illegality had never taken place."). At the hearing, the government elicited no testimony or proffered any other evidence demonstrating that, absent the unlawful traffic stop and the subsequent inventory search, Irving police would nevertheless have sought a warrant to

- 22 -

search the storage stalls.  Moreover, Investigator Fay applied for a warrant within hours of the traffic stop, while he was still on his same shift.  The evidence demonstrates that the traffic stop, the inventory search, the canine sniff, and the application for a search warrant occurred sequentially and incrementally, over a period of approximately five hours.  Each event led naturally to the next.  The government did not establish that the search warrant request was so attenuated as to make it independent of the traffic stop or the unlawful inventory search that followed.  *See id.* at 327 ("The primary limit on [the exclusionary] rule is that otherwise suppressible evidence will still be admitted if the connection between the alleged illegality and the acquisition of the evidence is 'so attenuated as to dissipate the taint.'" (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939))).

If any event could be said to have broken the chain of events between the traffic stop and vehicle search and the magistrate's issuance of the search warrant, it would be the canine sniff. Grazioso does not contend that the canine sniff was fruit of the unlawful traffic stop; he merely challenges the use of the canine sniff to support the search warrant on the ground that the affidavit of qualifications was not attached to the affidavit at the time Investigator Fay submitted it to the magistrate. Nevertheless, Grazioso does contend that the search of the storage stalls was connected to the traffic stop, and, as stated above,

each event from the traffic stop to the search of the stalls, including the canine sniff, led naturally to the next. The government neither argued nor attempted to prove that it would have arranged for the canine sniff absent the seizure of evidence from Grazioso's truck, or that it would have sought a warrant based on the canine sniff, without also relying on what was seized from the truck. It has not demonstrated that the independent source exception precludes application of the fruit of the poisonous tree doctrine to the seizure of the evidence from the storage stalls.

C

The government asserts that the evidence seized from the storage stalls should not be suppressed because the officers who conducted the search were entitled under *United States v. Leon*, 468 U.S. 897 (1984), to good-faith reliance on the warrant. *Leon* recognized an exception to the exclusionary rule when officers seize evidence in good-faith reliance on a warrant that is later found to have been issued without probable cause. *See id.* at 922. In essence, the Supreme Court in *Leon* reasoned that the purpose of the exclusionary rule is to deter police misconduct, and it concluded that this purpose would not be served by excluding evidence when it is the magistrate rather than the police officer who has committed the error. *See id.* at 916.

The *Leon* rationale is inapplicable, however, to a case where unlawful police activity is used to procure a search warrant. In

a case such as this one, where an unlawful traffic stop and ensuing illegal search constitute part of the basis for the search warrant affidavit, it is the police officer rather than the magistrate who has committed the constitutional violation.  Exclusion of evidence seized pursuant to the warrant would deter police misconduct.  The court therefore holds that the *Leon* good-faith exception to the exclusionary rule is inapplicable.  *See United States v. Davis*, 430 F.3d 345, 358 n.4 (6th Cir. 2005) ("[W]e agree with the numerous other circuits that have held that the *Leon* good-faith exception is inapplicable where a warrant was secured in part on the basis of an illegal search or seizure."); *United States v. O'Neal*, 17 F.3d 239, 243 (8th Cir. 1994) ("If the method by which evidence supporting a search warrant is seized is clearly illegal, then even under *Leon* . . . , evidence obtained under the resulting warrant should be excluded."); *United States v. Scales*, 903 F.2d 765, 767-68 (10th Cir. 1990) (holding that rationale of *Leon* did not apply when police misconduct was committed before warrant was issued); *United States v. Vasey*, 834 F.2d 782, 789-90 (9th Cir. 1987) ("We therefore conclude that a magistrate's consideration does not protect from exclusion evidence seized during a search under a warrant if that warrant was based on evidence seized in an unconstitutional search.  Accordingly, the good faith exception should not and will not be applied to the facts of this case."); *United States v. McQuagge*, 787 F. Supp. 637, 657 (E.D. Tex. 1991)

(holding that good-faith exception does not apply when illegally obtained evidence is necessary to support magistrate judge's finding of probable cause).

D

Assuming *arguendo* that the government intends to rely on the independent source doctrine, it has failed to meet its burden of demonstrating that the exception applies. Nor has it shown that the police were entitled to the *Leon* good-faith exception. Accordingly, the evidence seized from the storage stalls pursuant to the warrant must be suppressed as fruit of the illegal traffic stop and ensuing search.

*   *   *

For the reasons stated, the court grants Grazioso's February 23, 2006 motion to suppress.

**SO ORDERED.**

June 28, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 26 -