IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,           §
                                    §
                    Plaintiff,      §
                                    §   Criminal No. 3:06-CR-022-D
VS.                                 §
                                    §
ANTHONY JOSEPH GRAZIOSO,            §
                                    §
                    Defendant.      §

MEMORANDUM OPINION
AND ORDER

The government moves the court to reconsider its June 28, 2006 memorandum opinion and order granting defendant Anthony Joseph Grazioso's ("Grazioso's") February 23, 2006 motion to suppress. *See United States v. Grazioso*, 2006 WL 1767677 (N.D. Tex. June 28, 2006) (Fitzwater, J.) ("*Grazioso I*"). In *Grazioso I* the court held that Irving, Texas police officers had unlawfully stopped Grazioso's pickup truck, and it suppressed evidence seized during subsequent searches of his truck and storage stalls as fruit of the unlawful traffic stop. In its motion to reconsider, the government raises for the first time the argument that the traffic stop was lawful because the police had probable cause to believe Grazioso's truck contained contraband. Concluding that the government did not waive this argument by presenting it for the first time in its motion to reconsider, and that the traffic stop and subsequent searches of the defendant's truck and storage stalls were supported by probable cause, the court grants the government's motion, vacates *Grazioso I* in part, and denies Grazioso's February 23, 2006

motion to suppress.

I

A

On March 4, 2005 Henry Biddle ("Agent Biddle"), an agent of the Drug Enforcement Administration, contacted Brian Schutt ("Investigator Schutt"), an investigator in the Narcotics Division of the Irving, Texas Police Department ("IPD").   Agent Biddle informed Investigator Schutt that a confidential informant ("CI") had stated that a person named "Tony," a white male, approximately age 43, was dealing methamphetamine from two storage stalls located at Carl Road and State Highway 183 ("S.H. 183") in Irving. According to the CI, "Tony" ran a lawn service and carried 1/4- to 1/2-pound of methamphetamine in a blue or red Ford Ranger pickup truck, the drugs were located in a toolbox in the bed of the truck, and he took in payment for methamphetamine items stolen during burglaries or purchased with stolen credit cards.   The CI also related that "Tony" stored the stolen items in the two storage stalls.

Investigator Schutt and IPD Sergeant Rubealcaba believed that "Tony" was defendant Grazioso.   Investigator Schutt, who had known of Grazioso throughout his 20-year IPD career, was aware that Grazioso drove a blue Ford pickup truck, and both knew him to be a methamphetamine dealer.   Investigator Schutt ran Grazioso's name through the RMS, which showed that Grazioso owned a blue Ford

Ranger.

Investigator Schutt apprised Ken Fay ("Investigator Fay"), an IPD undercover narcotics investigator assigned to the Special Investigation Section of the Criminal Investigation Division, of the information that Agent Biddle had relayed to him.  Later that night, around 11:50 p.m., Investigator Fay conducted surveillance at the Public Storage facility near the intersection of Carl Road and S.H. 183 in Irving.  He observed a blue Ford Ranger pickup truck parked directly in front of stall K459 and Grazioso standing near the toolbox on the driver's side of the pickup.  Grazioso was already at the storage facility when Investigator Fay arrived. Another vehicle was parked for a short amount of time in front of the pickup.  After about 10 minutes of surveillance, Grazioso departed.

Investigator Fay radioed for assistance and followed him. Grazioso traveled southbound on Carl Road toward East Grauwyler Road.  Investigator Fay noticed Grazioso acting nervously as he drove, frequently looking around and in his rear-view mirror, which he knew to be consistent with the conduct of someone engaged in drug trafficking counter-surveillance.  Investigator Fay followed Grazioso to a gas station at the corner of East Grauwyler Road and Carl Road.  Grazioso exited his truck and looked at Investigator Fay, so Investigator Fay "called it," meaning he terminated the surveillance due to Grazioso's actions.

- 3 -

On the night of March 7, 2005, at around 11:50 p.m., Investigator Fay again conducted surveillance at the storage facility.  He positioned himself in the same place as before and observed Grazioso, the same blue Ford Ranger, another white male, and a red vehicle.  Investigator Fay watched Grazioso for approximately 10 minutes before Grazioso departed.  After Grazioso stopped at a nearby gas station, he headed eastbound on S.H. 183.

Investigator Fay called for assistance and followed Grazioso on S.H. 183, observing him from a distance of about three car lengths.  Grazioso took the Grauwyler Road exit.  Investigator Fay observed that Grazioso drove partially onto the shoulder of the road and continued to straddle the right lane and shoulder for about five to seven seconds while exiting the highway.  Because Investigator Fay was driving an unmarked unit, he radioed for a marked IPD patrol unit to initiate a traffic stop based on Grazioso's failure to maintain a single lane of traffic.  IPD Patrol Officer Jason Rogers ("Officer Rogers"), who was patrolling nearby and heading westbound on Grauwyler Road near S.H. 183, responded within seconds.  Officer Rogers effected the stop, and Grazioso pulled into the parking lot of the View Pointe Apartments, located at 2700 East Grauywler Road in Irving.

After it was determined that Grazioso had an outstanding parole warrant for a parole violation,[1] Officer Rogers decided to place him under arrest.  It was later decided that Grazioso's truck would be impounded.  Investigator Fay and another officer conducted an inventory of Grazioso's truck at the IPD station between 1:00 and 1:30 a.m. on March 8.  Using a key from Grazioso's keychain to unlock the toolbox in the truck bed, they found 191 grams of methamphetamine, distribution baggies, and paperwork showing Grazioso as the lessee of two storage stalls, including stall number K459, which Investigator Fay had surveilled.  Investigator Fay also found in the toolbox an empty case for a Glock 17 gun.

Soon after the inventory search, Investigator Fay contacted IPD Officer Ray Carmack ("Officer Carmack") and asked him to run his drug-detecting canine outside the K459 storage stall at the Public Storage facility.  At approximately 2:00 a.m., Officer Carmack ran his canine along the entire row of storage stalls that included K459.  The dog alerted outside stall K459, and Officer Carmack notified Investigator Fay.

Investigator Fay decided to seek a warrant to search both of Grazioso's storage stalls.  He prepared a search warrant affidavit and brought it before a county magistrate at approximately 5:30 a.m.  The affidavit recounted much of the information the CI had

---

[1]It is undisputed that neither Investigator Fay nor Officer Rogers was aware before the traffic stop of Grazioso's outstanding warrant.

provided Agent Biddle and that he had in turn relayed to Investigator Schutt.   The document also described Investigator Fay's surveillance of Grazioso at the storage stalls on March 4 and 7 and Grazioso's conduct while under observation, the traffic stop, the arrest, the inventory search (including the discovery of methamphetamine, drug paraphernalia, and storage stall leases that showed Grazioso to be the lessee), and the canine sniff. Concerning the canine sniff, the affidavit stated, in pertinent part: "ON 03-08-05, YOUR AFFIANT CONTACTED OFFICER R. CARMACK #764 WHO IS EMPLOYED BY THE IRVING POLICE DEPARTMENT AS A K-9 HANDLER FOR 'ROCKY,' ATTACHED HERETO AS EXHIBIT 'A' AFFIDAVIT OF QUALIFICATIONS; IT IS TO BE CONSIDERED AS PART OF THIS AFFIDAVIT AS IF WRITTEN HEREIN." D. Ex. 11.   The affidavit of qualifications, however, was not attached to the search warrant affidavit at the time Investigator Fay submitted it to the magistrate.   The magistrate issued a search warrant for stalls K459 and M516.

Investigators Fay and Schutt searched these storage stalls pursuant to the warrant.   One stall was packed with items such as tools, lawnmowers and edgers, computer equipment, and furniture. In stall K459, the officers found and seized firearms, including a Glock .40 caliber pistol, a Smith & Wesson .347 Magnum revolver, and a Mossberg 12-guage shotgun.   The officers also found and seized controlled substances, including methamphetamine.

The grand jury later indicted Grazioso for the offenses of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

B

Grazioso filed a motion to suppress on February 23, 2006, in which he moved to suppress all evidence seized on March 8, 2005, including, but not limited to, methamphetamine, from the searches of his pickup truck and two storage stalls.  The court conducted an evidentiary hearing on June 16 and 20, 2006.  In its brief and at the hearing, the government attempted to justify the traffic stop and subsequent searches and seizures by arguing that Grazioso had failed to maintain a single lane of traffic, in violation of Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999),[2] that he was lawfully stopped for a traffic violation, that the subsequent search was a lawful inventory search, and that the search of the stalls was lawful under the warrant.  In *Grazioso I* the court held that the government had not met its burden of demonstrating by a preponderance of the evidence that Investigator Fay and Officer

---

[2]Section 545.060(a) provides that "[a]n operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely."

- 7 -

Rogers had reasonable suspicion to effect the traffic stop pursuant to a violation of § 545.060(a). *See Grazioso I*, 2006 WL 1767677, at *4-*5. The court also concluded that the government had failed to meet its burden of establishing that the evidence seized during the subsequent searches of Grazioso's truck and storage stalls was not fruit of the illegal traffic stop, and the court suppressed this evidence. *See id.* at *7, *10.

The government now moves the court to reconsider *Grazioso I*. It asserts that it did not waive any arguments that were not initially briefed or addressed; the police officers had probable cause to stop and search Grazioso's truck; and, at a minimum, the circumstances gave rise to an objectively reasonable suspicion that criminal activity was afoot. The government also reasserts its position that the traffic stop was justified by Grazioso's alleged failure to maintain a single lane of traffic. Finally, the government contends that the warrant for the search of the storage units was supported by probable cause and that, regardless of the validity of the truck search, the evidence seized from the storage units is admissible.

## II

### A

The government contends anew that the police were justified in performing the traffic stop based on a purported violation of § 545.060(a). In *Grazioso I* the court held that "the government

- 8 -

did not prove that, when Grazioso failed to stay within his lane of traffic, his movement was not safe or was not safely made," as required by *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App. 1998, pet. ref'd). *Id.* at *5. The government does not seek to reopen the hearing to introduce any new evidence. Without evidence that Grazioso's movement was not safe or not made safely, it has failed to demonstrate any basis for the court to alter its decision in *Grazioso I* that Investigator Fay lacked reasonable suspicion to effect the traffic stop based on a violation of § 545.060(a).

B

The government also maintains that the traffic stop was justified because Investigator Fay had probable cause to believe the truck contained contraband and, at a minimum, that he had reasonable suspicion that criminal activity was afoot. The government did not present these arguments at the hearing or in its response brief to Grazioso's suppression motion.[3] Nevertheless, it maintains that it did not waive these arguments by waiting until its motion to reconsider to raise them.

---

[3]In its March 23, 2006 response brief, the government did contend that the search of the truck was supported by probable cause. But, as the court explained in *Grazioso I*, the government's probable cause argument was offered in support of the search that followed the stop, not the initial stop itself. *See Grazioso I*, 2006 WL 1767677, at *6.

1

Despite the government's failure to raise the probable cause argument until its motion to reconsider,[4] circuit precedent makes clear that the court is free at this pretrial stage to revisit its earlier pretrial ruling on the suppression motion. *See United States v. Palmer*, 122 F.3d 215, 221 (5th Cir. 1997) ("District courts hearing criminal cases may revisit pretrial issues, such as suppression motions, upon which they have previously ruled." (citing *United States v. Mentos*, 421 F.2d 215, 220 (5th Cir. 1970)); *United States v. Acosta*, 669 F.2d 292, 293 (Former 5th Cir. 1982) (per curiam) ("[T]he district court has broad power to reconsider the correctness of its interlocutory rulings." (citing *Lord v. Kelley*, 334 F.2d 742, 746 (1st Cir. 1964)); *United States v. Jones*, 608 F.2d 386, 390 (9th Cir. 1979) (noting that, within time for government's interlocutory appeal of suppression order, district court has plenary power to revisit its decision on suppression motion).

---

[4]The government squandered two prime opportunities to assert probable cause as a justification for the traffic stop: in its response brief to Grazioso's motion to suppress and at the suppression hearing. Only after the court, in a 26-page memorandum opinion and order, detailed exactly how the government's initial arguments failed did the government present an alternative argument to support the traffic stop. Consequently, the court has expended its resources preparing opinions on the merits of the suppression motion and on a motion to reconsider that would not have both been necessary had the government been fully prepared on the suppression motion.

To support its argument of non-waiver, the government relies on *United States v. Hassan*, 83 F.3d 693 (5th Cir. 1996) (per curiam). In *Hassan* the district court had granted the defendants' motion to suppress, concluding that the police officer's warrantless search violated the Fourth Amendment. *Id.* at 695. The government filed a motion for reconsideration, raising for the first time the ground that the independent source doctrine applied. *Id.* The district court denied the motion to reconsider, and the government appealed. *Id.* On appeal, the defendants argued that the government had waived its independent source argument by not raising it in the district court until the motion for reconsideration. *Id.* at 696. The *Hassan* panel held that the government had not waived its argument:

> We decline to conclude that the Government waived the independent source argument by not raising it until the motion for reconsideration. . . . The Government . . . presented the independent source issue at a time when the district court possessed the ability to rule on it. Clearly, the Government did not waive its argument on appeal by waiting until the motion for reconsideration to advance it.

*Id.*[5]   Based on *Hassan*, the court will reach the merits of the government's probable cause argument, because it concludes that the government has not waived it by waiting until the motion to reconsider to present it.

2

The government contends the warrantless stop and search of Grazioso's truck were justified because Investigator Fay had probable cause to believe the pickup contained contraband.

"Probable cause is determined by an objective test: it cannot be established simply by showing that the police subjectively believed that probable cause existed; likewise, the subjective belief of the police that they did not have probable cause does not preclude the government's showing that there was." *United States v. Cooper*, 949 F.2d 737, 744-45 (5th Cir. 1991) (citing *Florida v. Royer*, 460 U.S. 491 (1983)); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996); *Arkansas v. Sullivan*, 532 U.S. 769 (2001) (per curiam)).

---

[5]The *Hassan* panel alluded to the district court's discretion concerning whether to reopen the hearing to allow the government to present additional evidence on the independent source argument. *Hassan*, 83 F.3d at 696.  The panel noted that, in reviewing for abuse of discretion this portion of the district court's decision, it could consider that the government failed to raise the independent source doctrine until the motion to reconsider.  *Id.* But here the government does not seek to reopen the hearing to introduce additional evidence.

"Probable cause to search an automobile exists when 'trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband.'"  *Cooper*, 949 F.2d at 745 (quoting *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir. 1983)).

Because probable cause in this case arose from a CI's tip, the court's probable cause evaluation is guided by *Illinois v. Gates*, 462 U.S. 213 (1983).  *See United States v. Cisneros-Mireles*, 739 F.2d 1000, 1002-03 (5th Cir. 1984) (citing *United States v. Mendoza*, 722 F.2d 96, 100 (5th Cir. 1983)).  Evaluating whether a CI's tip was sufficient to establish probable cause involves a flexible, totality-of-the-circumstances determination of whether there was a fair probability that contraband would be found in a particular place.  *See Gates*, 462 U.S. at 238.  The court considers the CI's veracity and reliability and the basis of the CI's knowledge.  *See id.; United States v. McWaine*, 243 F.3d 871, 874 (5th Cir. 2001).  A deficiency in one factor "may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *United States v. Marbury*, 732 F.2d 390, 395 (5th Cir. 1984) (quoting *Gates*, 462 U.S. at 233).  A CI's tip that otherwise would not constitute probable cause may nonetheless do so if details of the tip are corroborated by independent police work.  *See Gates*, 462 U.S. at 241-42.  Corroboration may be sufficient even if the

police corroborate only innocent activity in the tip. *See id*. at 243 n.13.   "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts."   *Id*.

Examining objectively the totality of the circumstances, the court concludes that Investigator Fay had probable cause to believe that contraband would be found in Grazioso's truck.   At the hearing, the government did not present evidence that Investigator Fay knew any facts about the CI's veracity or reliability or the basis of the CI's knowledge, or even that he knew who the CI was. Nevertheless, Investigator Fay and other IPD officers sufficiently corroborated information the CI provided.   The CI's tip indicated that an individual named "Tony," who drove a blue or red pickup truck, was dealing methamphetamine out of two storage stalls at Carl Road and S.H. 183 in Irving.   The CI also said that Grazioso kept methamphetamine in the locked toolbox in his pickup's bed. Investigator Schutt, believing "Tony" to be Grazioso, verified that Grazioso indeed drove a blue pickup truck.   With this information, Investigator Fay surveilled the Public Storage facility that the CI described, where at nearly midnight he observed Grazioso, his blue Ford Ranger, and another vehicle.   Investigator Fay followed Grazioso as he left the storage facility and observed him acting nervously and engaging in activity Investigator Fay knew to be

consistent with drug trafficking counter-surveillance.  Three nights later, shortly before midnight, Investigator Fay again witnessed Grazioso at the same storage stall, in the presence of his blue Ford Ranger and accompanied by another individual.

Although none of the activity Investigator Fay witnessed was *per se* unlawful, Grazioso's conduct was suspicious.  His presence at a storage facility around midnight on two separate nights with other individuals was unusual and was consistent with the CI's report of methamphetamine dealing, as was his appearance of being nervous and looking in his mirrors frequently after leaving the storage facility.

IPD officers corroborated several facts in the CI's tip and did not find any of the CI's allegations to be inaccurate. Verifying that the CI was correct about several facts greatly increased the probability that the CI was also accurate concerning the presence of methamphetamine in the toolbox of Grazioso's pickup truck.  *See id.* at 244 ("'[B]ecause an informant is right about some things, he is more probably right about other facts'——including the claim regarding the . . . illegal activity." (alteration in original) (citation omitted) (quoting *Spinelli v. United States*, 393 U.S. 410, 427 (1969))).  The facts known to Investigator Fay before the traffic stop, including the corroboration of the CI's tip, objectively gave rise to a fair probability that contraband would be found in Grazioso's truck.

Investigator Fay thus had probable cause to initiate the traffic stop.

C

After Grazioso's arrest for the parole violation warrant, Officer Rogers impounded Grazioso's truck even though it was lawfully parked in the apartment complex where Grazioso resided. The truck was towed to the IPD station, where Investigator Fay conducted an inventory search.  In the initial motion to suppress and at the hearing, the parties vigorously contested the legality of the impoundment and inventory search.  The government attempted to justify the search as valid under the inventory exception to the warrant requirement, whereas Grazioso contended that the impoundment and inventory search were merely part of a ruse to search the truck for contraband.  Although Grazioso has raised plausible concerns regarding whether the impoundment and inventory search were in fact undertaken as community caretaking functions or were merely part of a ruse to search the truck for contraband, the court need not decide whether the search falls within the inventory exception.  This is because, as the court has already held, the police had probable cause to believe Grazioso's truck contained contraband, and the warrantless search was valid under the automobile exception to the warrant requirement.

The automobile exception permits the police to conduct a warrantless search of a vehicle if it "is readily mobile and

probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam).  If probable cause to search an automobile exists at the scene where it was stopped, the police may decide to search it later at the station without a warrant.  *See Texas v. White*, 423 U.S. 67, 68 (1975) (per curiam) ("[P]olice officers with probable cause to search an automobile on the scene where it was stopped [may] constitutionally do so later at the station house without first obtaining a warrant." (citing *Chambers v. Maroney*, 399 U.S. 42, 52 (1970))).  Because the police had probable cause to believe Grazioso's truck contained contraband, it was not unreasonable for them to take it to the police station and search it without a warrant.

"If supported by probable cause, every part of a vehicle which may conceal the object of the search may be searched."  *United States v. Zucco*, 71 F.3d 188, 191-92 (5th Cir. 1995) (citing *United States v. Ross*, 456 U.S. 798 (1982); *United States v. McSween*, 53 F.3d 684 (5th Cir. 1995)).  The officers were therefore justified in conducting a warrantless search of the locked toolbox in the bed of Grazioso's truck.

D

The court concludes that the traffic stop comported with the Fourth Amendment's reasonableness requirement because Investigator Fay objectively had probable cause to believe Grazioso's truck contained contraband. Moreover, the subsequent warrantless search of the truck, including the locked toolbox, at the police station was valid under the automobile exception.

III

The court turns next to the search of Grazioso's storage stalls. The search of the storage stalls was conducted pursuant to a warrant issued by a magistrate.

A

In reviewing a search pursuant to a warrant, the court engages in a two-step inquiry. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003). First, the court determines whether the good-faith exception to the exclusionary rule applies. *Id.* (citing *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129-30 (5th Cir. 1997)). If the good-faith exception applies, the court "need not reach the question of probable cause for the warrant unless it presents a 'novel question of law,' resolution of which is 'necessary to guide future action by law enforcement officers and magistrates.'" *Id.* (citing *Pena-Rodriguez*, 110 F.3d at 1129-30). If the good-faith exception does not apply, the court proceeds to a determination of whether "the magistrate had a substantial basis

for . . . concluding that probable cause existed." *United States v. Lampton*, 158 F.3d 251, 258 (5th Cir. 1998) (omission in original) (quoting *Pena-Rodriguez*, 110 F.3d at 1129-30).

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *Payne*, 341 F.3d at 399 (citing *United States v. Leon*, 468 U.S. 897, 921-25 (1984)).

> The good faith exception cannot apply if one of four circumstances is present: "(1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid."

*Id.* (quoting *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992) (per curiam)).

                                    B

In his initial suppression motion, Grazioso contended that the good-faith exception did not apply to the search of the storage stalls because the search warrant affiant—Investigator Fay—knowingly and intentionally, or with reckless disregard for

                                 - 19 -

the truth, included false statements in the affidavit in support of the warrant.   It is true that the search warrant affidavit contained a false statement.   To support the search warrant, the affidavit averred that Officer Carmack's canine alerted outside Grazioso's storage stall.   The affidavit falsely stated that the canine's affidavit of qualifications was attached to the search warrant affidavit, when in fact it was not.   But the court need not examine Investigator Fay's state of mind——whether he made the false statement knowingly or with reckless disregard for the truth——because, even excluding the information about the canine sniff, the search warrant affidavit contained sufficient true facts giving the magistrate a substantial basis for concluding that probable cause existed.

The search warrant affidavit recounted the details of the CI's tip and many of Investigator Schutt's and Investigator Fay's efforts to corroborate them.   As the court explains *supra* at § II(B)(2), the CI's tip had been sufficiently corroborated to give the police probable cause to believe Grazioso's truck contained contraband.   The search warrant affidavit included additional corroboration.   It described the search of Grazioso's truck, which corroborated the CI's allegation that Grazioso kept methamphetamine in the toolbox in the bed of his truck.[6]   Thus even absent the

---

[6]In *Grazioso I* the court concluded that this detail tainted the search warrant affidavit, since the initial traffic stop was unlawful.   *Grazioso I*, 2006 WL 1767677, at *8-*9.   Because the

canine sniff, the substantial corroboration of the CI's tip gave
the magistrate reason to believe that other details of the tip,
including that Grazioso was dealing methamphetamine out of his
storage stalls, were correct.  *See Gates*, 462 U.S. at 244
("'[B]ecause an informant is right about some things, he is more
probably right about other facts'——including the claim regarding
the . . . illegal activity." (alteration in original) (citation
omitted) (quoting *Spinelli*, 393 U.S. at 427)).  The magistrate
therefore had a substantial basis for concluding that probable
cause existed to believe that contraband or evidence of illegal
activity would be found in the storage stalls.  Consequently, the
search of Grazioso's storage stalls pursuant to the search warrant
was valid.  *See id.* at 238-39 ("[T]he duty of a reviewing court is
simply to ensure that the magistrate had a 'substantial basis for
. . . [concluding]' that probable cause existed." (omission and
second alteration in original) (quoting *Jones v. United States*, 362
U.S. 257, 271 (1960))).

---

government had not proved that an exception to the fruit of the
poisonous tree doctrine applied, the court suppressed evidence
seized pursuant to the search warrant.  *Id*.  But the concern
regarding taint no longer arises because the government has now
established the validity of the initial traffic stop and search of
the truck.  Because the search was lawful, it can be used to
corroborate the CI's tip.

*   *   *

For the reasons stated, the court grants the government's July 10, 2006 motion to reconsider, vacates *Grazioso I* in part, and denies Grazioso's February 23, 2006 motion to suppress.  The court restores this case to the trial docket and sets it for trial on Monday, September 11, 2006.

**SO ORDERED.**

August 9, 2006.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE